Filed 7/16/25  P. v. Jimenez-Velarde CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C100271 |
| Plaintiff and Respondent, | (Super. Ct. No. 62178607) |
| v. | |
| HECTOR ANTONIO JIMENEZ-VELARDE, | |
| Defendant and Appellant. | |

Following the denial of his pretrial request for mental health diversion, defendant Hector Antonio Jimenez-Velarde pled no contest to assault with a deadly weapon and inflicting corporal injury on a spouse or cohabitant.  He now appeals, arguing the trial court abused its discretion when it found him unsuitable for diversion.  Because substantial evidence supports the court's determination that Jimenez-Velarde posed an unreasonable risk of danger to public safety, we affirm.

1

BACKGROUND

In 2021, Jimenez-Velarde attended a party with the victim, who was Jimenez-Velarde's boyfriend at the time. While at the party, Jimenez-Velarde became belligerent and charged the victim, knocking him to the ground. The victim got into his car; Jimenez-Velarde followed him. Jimenez-Velarde broke the rearview mirror and used the broken mirror to hit the victim in the head multiple times. Jimenez-Velarde's friends pulled him away and the victim went to his apartment. Later that night, Jimenez-Velarde showed up at the victim's apartment and yelled at the victim to open the door. When the victim refused, Jimenez-Velarde began banging on the door and windows. The victim ultimately let Jimenez-Velarde in. Once inside, Jimenez-Velarde began hitting the victim in the head with an aluminum bar. The victim activated a panic alarm from his cellphone to summon the police.

In 2022, police responded to a call regarding a possible stabbing at the victim's apartment. The victim (now Jimenez-Velarde's husband) had several lacerations to his arm, face, and head. The victim reported that he locked himself in the bathroom after Jimenez-Velarde accused him of cheating. Jimenez-Velarde broke the door down, kicked, punched, and stabbed the victim multiple times using a large steak knife. The victim said he was in fear for his life.

Based on these incidents, the People charged Jimenez-Velarde with, among other things, attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664), multiple counts of assault with personal use of a deadly weapon (§ 245, subd. (a)(1)), and multiple counts of inflicting corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)).

---

[1] Undesignated statutory references are to the Penal Code.

Prior to trial, Jimenez-Velarde moved for mental health diversion pursuant to section 1001.36. The People opposed the motion and the trial court held a hearing on the matter.

The court denied the motion in a written order. The court said "[i]t appears" Jimenez-Velarde "may" meet the two eligibility requirements for diversion—namely, that he was diagnosed with a qualifying mental disorder and that the mental disorder was a significant factor in the commission of the charged offense. As to the suitability criteria, the court first addressed whether Jimenez-Velarde's symptoms of the mental disorder would respond to mental health treatment. The court explained: "[I]t is uncertain just exactly what [the expert's] report suggests. While the report may indicate so, the reports' underpinnings do not seem to be in agreement. Clearly, it is suggested that some drug counseling for his mental health or his substance abuse is necessary. It is uncertain whether [or] not he will be responsive to any treatment as may be suggested for any mental health diagnosis. Having previously been unsuccessful . . . ."[2] The court also doubted whether Jimenez-Velarde would comply with treatment as a condition of diversion.

The trial court then explained that "the crux of this case is whether or not [Jimenez-Velarde] poses an unreasonable risk of danger to public safety." The court concluded that Jimenez-Velarde posed such a risk: "As to this suitability factor, the defendant fails. His history of criminal behaviors are predominately acts of violence, are marked and are suggested by [the expert] as a result of his impulsivity there being no offered treatment to change the impulsivity. In this particular [sic] his last victims are in fact the same person and one with whom he has familial relationship and wherein he stabbed his husband. The court equates this with attempted murder." In summarizing its

---

[2] This sentence is cutoff midsentence in the trial court's order.

conclusions, the court noted that Jimenez-Velarde "continues to be a danger and the public cannot obtain any assurance that it will be safe if the defendant[']s motion were to be granted."

Jimenez-Velarde ultimately pled no contest to one count of assault with a deadly weapon and one count of inflicting corporal injury, and admitted he inflicted great bodily injury in circumstances involving domestic violence. (§ 12022.7, subd. (e).) The trial court sentenced him to an aggregate term of seven years of imprisonment

Jimenez-Velarde timely filed a notice of appeal in January 2024. The trial court granted his request for a certificate of probable cause to challenge the denial of the diversion petition. His opening brief was filed in November 2024, and this case became fully briefed on April 23, 2025.

DISCUSSION

Jimenez-Velarde contends the trial court abused its discretion in finding him unsuitable for diversion. We disagree.

Section 1001.36 permits trial courts to grant pretrial diversion if the defendant satisfies the eligibility requirements for diversion and the trial court finds the defendant is suitable for diversion. (§ 1001.36, subd. (a).) A defendant is suitable for diversion if, among other things, the "defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).) Under section 1170.18, an unreasonable risk of danger to public safety is an unreasonable risk that the defendant will commit a "super strike," which includes any homicide or attempted homicide offense, any serious or violent felony punishable by life imprisonment or death, and sexually violent offenses. (§§ 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv).) When making this determination, the trial court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."

4

(§ 1001.36, subd. (c)(4).) In addition, to be suitable for diversion, a qualified mental health expert must opine that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (c)(1).)

We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147; *People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, at p. 449.)

Jimenez-Velarde first argues the trial court erred because it did not expressly find he was reasonably likely to commit a super-strike offense. He cites no authority that such a finding must be *express*; in fact, cases suggest the contrary. (See, e.g., *People v. Williams* (2021) 63 Cal.App.5th 990, 1003 [reviewing trial court's implied finding that the defendant was reasonably likely to commit a super-strike offense if granted diversion].) In any event, the court here expressly found Jimenez-Velarde posed an unreasonable risk of danger to public safety and explained that it "equate[d]" one of his charged offenses with attempted murder, which is a super strike offense. Given the context, it is clear the court found there was an unreasonable risk that Jimenez-Velarde would commit a homicide or attempted homicide if he were treated in the community.

Jimenez-Velarde next argues there was no substantial evidence to support the finding that he was likely to commit a super strike offense. He submits his behavior shows he "acted impulsively and with violence in a negligent and perhaps reckless way" but insists "there is absolutely no evidence to show that he acted with the criminal intent for murder." This argument has no merit. While Jimenez-Velarde's conduct in the charged offenses may be described as impulsive, that does not preclude the trial court from reasonably inferring an intent to kill. (Cf. *People v. Sanchez* (2016) 63 Cal.4th 411,

5

457 ["Because direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts"].) Here, in just one of the offenses charged, Jimenez-Velarde broke down a door, stabbed the victim with a large steak knife multiple times, and injured the victim's arm, face, and head during the attack. The victim feared for his life. Given the nature and manner of the charged crimes and the severity of Jimenez-Velarde's conduct, we conclude substantial evidence supports the determination that he poses an unreasonable risk of committing a homicide or attempted homicide.

Jimenez-Velarde contends the trial court improperly "treat[ed] the charged offense of attempted murder as a conviction" even though it had not been adjudicated yet. This argument is also unavailing, as section 1001.36, subdivision (c)(4) expressly permits a trial court to consider the "current charged offense" when determining whether a defendant poses an unreasonable risk of danger to public safety.

Jimenez-Velarde further claims the trial court did not adequately consider "the remedial purpose" of the diversion statute. In support, he cites to *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, where the appellate court concluded the trial court erred in denying a diversion petition without fully considering the "statutory principles and purpose of the mental health diversion statute" (*id*. at p. 892). *Qualkinbush* is inapposite because, in that case, the trial court exercised its discretion to deny diversion even though all the threshold statutory criteria for diversion were met or assumed—including the requirement that the defendant not pose an unreasonable risk of danger to public safety. (*Id*. at pp. 885, 888.) Here, in contrast, the trial court denied the petition because Jimenez-Velarde did not qualify for diversion under the statute.

Jimenez-Velarde separately argues that, to the extent the trial court also denied diversion on the ground that he would not be responsive to treatment, such a finding is not supported by substantial evidence. Because the trial court did not abuse its discretion in finding Jimenez-Velarde posed an unreasonable risk of danger to public safety, the

request for mental health diversion would properly be denied on that basis alone.  We thus need not consider this separate argument.

DISPOSITION

The judgment is affirmed.

/s/
BOULWARE EURIE, Acting P. J.

We concur:


/s/
FEINBERG, J.


/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.